UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| OSF HEALTHCARE SYSTEM, an Illinois not for profit corporation d/b/a SAINT FRANCIS MEDICAL CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>CONTECH CONSTRUCTION PRODUCTS INC. GROUP COMPREHENSIVE HEALTH CARE,<br><br>    Defendant. | Case No. 1:13-cv-01554-SLD-JEH |

## ORDER

Plaintiff OSF Health Care System ("OSF") is suing Defendant Contech Construction Products Inc. Group Comprehensive Health Care ("Plan") under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Illinois state law for compensation for medical services OSF rendered to a Plan participant at its St. Francis Medical Center. The Plan has moved to dismiss OSF's Complaint on several grounds. Mot. Dismiss 1, ECF No. 5. Plaintiff's Motion for Leave to File Supplemental Response to Motion to Dismiss, ECF No. 14, is DENIED. For the following reasons, Defendant's Motion to Dismiss, ECF No. 5, is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[1]

The Plan is a health care plan for employees of Contech Engineered Solutions, LLC ("Contech"), formerly Contech Construction Products Inc. The Plan is a self-funded employee

---

[1] The material in this section is based on allegations in the Complaint, ECF No. 1, and documents attached thereto.

1

welfare benefit plan as defined by ERISA, 29 U.S.C. § 1002. United Medical Resources, Inc. ("UMR") administers claims under the Plan. OSF, as St. Francis Medical Center, is a health care services provider in Peoria, Illinois.

In October 2011, OSF provided medical services to J.G., son and dependent of James Giordano, a Contech employee and Plan participant. J.G. was taken to OSF St. Margaret's—an in-network provider in Spring Valley, Illinois—on October 29, 2011, while suffering seizures and partial paralysis, among other symptoms. Medical staff at St. Margaret's told J.G.'s parents that he required immediate evaluation by a pediatric facility with neurological capability, and the nearest such facility was OSF St. Francis Medical Center. Accordingly, J.G. was transferred to the pediatric intensive care unit at St. Francis, an out-of-network provider in Peoria, Illinois. There, J.G. received treatment on October 30 and 31, 2011, at a total cost of $21,332.00. OSF billed the Plan for this amount. The Plan only paid $9,176.23, refusing to pay the $12,155.77 balance.

The Summary Plan Description ("SPD"), the Plan's governing document, provides that participants may appeal a benefits claim denial within 180 days following receipt of notice of an adverse benefit determination. That notice is to contain, among other information, a "reference to the specific portion of the SPD upon which a denial is based" and "[s]pecific reasons for denial."

In a January 2, 2012 Explanation of Benefits notice sent to Giordano and OSF, the Plan indicated that it refused to pay $1,409.43 in "Room & Board" and $10,522.34 in "Hospital Extras" because these services "exceed[ed] the usual, reasonable, and customary amounts. Refer to the General Exclusions in your SPD." The Plan also refused to pay two charges labeled as "Hospital Extras," in the amounts of $112.00 apiece, stating that they were "denied as

unbundled/unrelated/undocumented/unidentified/duplicated or erroneous. Refer to the General Exclusions in your SPD." The notice further indicated that an appeal of this denial must be submitted in writing within 180 days of its receipt, and it must include "proof that the claim for benefits is payable under the provisions of the Plan. Failure to include relevant facts will be considered a waiver of your right to include them in your appeal."

In a May 3, 2012 letter, OSF identified Giordano's claim by name, account number and member ID, and demanded payment of the $12,155.77 balance. OSF explained:

> [W]e are unable to accept your request for usual and customary pricing. It is standard practice for all of our Entities to bill according to the guidelines set forth by Medicare. In keeping with that doctrine, we expect the same principles to apply to any party who accept[s] responsibility for claims processing. This letter shall serve as our intent to be paid in full for all billed charges. Non-compliance with this directive will result in added financial responsibility for the patient. Please remit additional payment immediately.

OSF submitted an identical request on May 25, 2012. Additionally, in a June 30, 2012 document addressed to UMR and entitled "Appeal for Additional Finalized Payment," James Giodarno discussed the circumstances leading to his son's treatment at OSF, explained that UMR led him to believe his son qualified for treatment at St. Francis at an in-network rate, and requested that the Plan pay the balance of OSF's bill.

On February 7, 2013, counsel for OSF submitted a letter requesting payment from the Plan for the remaining balance, asserting OSF's beneficiary status under ERISA, 29 U.S.C. § 1002(8), and stating that OSF would interpret failure by the Plan to respond within 30 days as exhaustion of OSF's administrative remedies. The Plan replied on February 20, 2013, stating that OSF's appeal was received on February 12, 2013; therefore, it was time-barred under the 180-day deadline for appeals following receipt of an adverse benefit determination. On March

3

20, 2013, counsel for OSF responded that its February 7, 2013 correspondence with the Plan was part of a "continued appeal" that began with OSF's May 3, 2012 letter.

On November 23, 2013, OSF filed the instant suit as a "beneficiary" under ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking payment of the balance for Giordano's treatment, which OSF claims it is owed pursuant to the Plan's terms and federal law governing health insurance coverage of out-of-network emergency care, *see* 42 U.S.C. § 300gg-19a(b)(1)(C)(II). OSF additionally seeks payment of interest, running from December 15, 2011, on this allegedly delinquent payment of a claim for health care services pursuant to 215 ILCS 5/368a(c). On February 5, 2014, the Plan moved to dismiss the Complaint in its entirety.

## DISCUSSION

The Plan moves to dismiss on the following grounds: (1) OSF lacks standing to maintain this lawsuit under ERISA § 502(a)(1)(B); (2) OSF's administrative appeal is untimely under the terms of the Plan; and (3) ERISA pre-empts application of Illinois law requiring payment of interest. Def.'s Mem. in Supp. Mot. Dismiss 1, ECF No. 6.

### I. Standing to Sue as Beneficiary

#### A. Legal Standard

The party invoking federal jurisdiction has the burden of establishing his standing to sue. *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). When standing is challenged in a motion to dismiss, the court must accept as true all well-pleaded allegations in the complaint. *Id.*

An ERISA plan "participant" or "beneficiary" may sue to recover benefits due to him, to enforce his rights, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "beneficiary" as a person designated by a participant, or by

the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. *Id.* § 1002(8). The Seventh Circuit has held that a medical services provider suing as an assignee of a participant has standing as a "beneficiary." *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). To satisfy standing, the would-be beneficiary need only have a "colorable claim to benefits" under the plan. *Id.* "Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking." *Id.* Under this standard, even where the plan's terms prohibit assignment without its consent, "the possibility of direct payment" to the provider suffices to state a colorable claim. *Id.* at 701. This standard sets a "low threshold" for standing: even where the merits of the claim are weak, the mere possibility of success establishes beneficiary standing to sue. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878–79 (7th Cir. 2001) (quoting *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 790 (7th Cir. 1996)).

**B. Analysis**

OSF claims standing as an ERISA "beneficiary" on the basis of receiving direct payment of benefits from the Plan. Compl. ¶ 31, ECF No. 1. On this point, the SPD provides:

> Benefits for medical expenses covered under this Plan may be assigned by a Plan participant to the provider; however, if those benefits are paid directly to the employee, the Plan will be deemed to have fulfilled its obligations with respect to such benefits. The Plan will not be responsible for determining whether any such assignment is valid. Payment of benefits that have been assigned will be made directly to the assignee unless a written request not to honor the assignment, signed by the covered employee and the assignee, has been received before the proof of loss is submitted.

Compl., Ex. B at 74, ECF No. 1-2. These terms allow for direct payment to a provider assignee, *see Kennedy*, 924 F.2d at 701, and the parties agree that the Plan did directly pay OSF part of the claimed cost of Giordano's treatment. *See* Compl. ¶ 5; Def.'s Mem. in Supp. Mot. Dismiss 2. By comparison with the beneficiary in *Kennedy*, moreover,

5

OSF has a far more "colorable" claim to assignee status because the Plan here has no prohibition on assignment absent its consent. *See Kennedy*, 924 F.2d at 700–01.

The Plan argues that OSF cannot claim "beneficiary" status under *Kennedy* because OSF does not allege receiving an assignment of Giordano's rights under the plan. Def.'s Mem. in Supp. Mot. Dismiss 7. Indeed, the Plan maintains, OSF implicitly denied the possibility of assignment when it stated that the Plan's refusal to pay the balance "will result in added financial responsibility" for Giordano. The Plan, however, does not provide legal authority for the proposition that such language negates the possibility of assignment in all circumstances, *see, e.g., United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) (noting that failure to cite relevant legal authority constitutes a waiver of an argument), and the Court is not convinced of its universal truth.[2]

The Plan's reliance on *OSF Healthcare v. Weatherford*, No. 10-1400, 2012 U.S. Dist. LEXIS 40021, at *14–16 (C.D. Ill. Mar. 23, 2012) is unavailing. In that case, the benefit plan prohibited assignment and the circumstances precluded OSF there from receiving direct payment. *Id.* Here, by contrast, the language of the Plan does not clearly prohibit assignment and OSF alleged that it has received direct payment from the Plan. OSF has met the low threshold for statutory standing as a beneficiary under ERISA at the motion to dismiss stage. *See Kennedy*, 924 F.2d at 700–01.

---

[2] The Court also disagrees that OSF's statement in its March 20, 2013 appeal letter, that "[w]e do not have to act on behalf of the patient as a beneficiary," disclaims its beneficiary status. *See* Compl., Ex. D at 42, ECF No. 1-3. The Plan presents this statement out of context. Def.'s Mem. in Supp. Mot. Dismiss 7. The surrounding sentences in the letter assert OSF's claimed rights to appeal and to sue as a beneficiary under ERISA. Compl., Ex. D at 42.

6

## II. Untimely Appeal

### A. Legal Standard

The Seventh Circuit has interpreted ERISA to require a plaintiff to exhaust plan administrative remedies before bringing suit. *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012). Administrative exhaustion serves to minimize the number of frivolous lawsuits, promote non-adversarial dispute resolution, and decrease the cost and time necessary for claim settlement. *Gallegos v. Mount Sinai Med. Cntr.*, 210 F.3d 803, 808 (7th Cir. 2000). Courts may excuse a failure to exhaust administrative remedies "where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Id.* (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 361 (7th Cir. 2011)). Failure to exhaust administrative remedies includes failure to file a timely appeal from denial of benefits. *Gallegos*, 210 F.3d at 808. Whether to dismiss an ERISA claim for failure to exhaust administrative remedies lies within the discretion of the trial court. *Gilbride v. Highmark Blue Shield of PA*, No. 13-CV-2047, 2013 WL 6247447, at *3 (C.D. Ill. Nov. 7, 2013) (citing *Edwards*, 639 F.3d at 361).

An ERISA plan's notice of denial of benefits must include: (1) the specific reasons for a denial of benefits; (2) a reference to the specific plan provisions on which the determination is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim; and (4) a description of the plan's review procedures and the applicable time limits. 29 C.F.R. § 2560.503-1(g)(l)(i)-(iv); *see Herman v. Cent. States, Se. & Sw. Areas Pension Fund,* 423 F.3d 684, 693 (7th Cir. 2005). This content requirement "ensures that a full and fair review is conducted by the administrator, enables the claimant to prepare adequately for appeal to the federal courts or further administrative review, and makes it possible for the courts

7

to perform the task, entrusted to them by ERISA, of reviewing that denial." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 693 (7th Cir. 1992). A plan administrator's substantial compliance with this requirement is sufficient. *Id.*

Substantial compliance occurs when the plan's notice identifies the items of evidence the plan considered, including the weight given to each, and "sufficiently indicate[s] the reasoning underlying" its decision. *See id.* at 694 (quoting *Brown v. Ret. Comm. of the Briggs & Stratton Ret. Plan*, 797 F.2d 521, 535–36 (7th Cir. 1986)). In other words, the court must determine whether "the beneficiary [was] supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1142 (7th Cir. 1997) (internal quotation omitted) (finding substantial compliance where letters informing plaintiff that skilled nursing services would be limited included "specific reasons," namely that care could be provided by lay family member, and cited specific plan provisions). If a plan fails to follow claims procedures consistent with 29 C.F.R. § 2560.503-1, a claimant shall be deemed to have exhausted the plan's administrative remedies. 29 C.F.R. § 2560.503-1(l).

**B. Analysis**

The Plan argues that OSF's letters of May 5 and May 23, 2012 "contain no rationale or evidence to support reversal of the adverse benefits decision," and therefore do not constitute appeals of that decision. Def.'s Mem. in Supp. Mot. Dismiss 8. OSF's first appeal, therefore, is its February 7, 2013 letter, the Plan maintains. *Id.* Because OSF submitted this appeal more than 180 days following its receipt of the January 2, 2012 denial of benefits letter, it is time barred and OSF's suit must be dismissed for failure to exhaust administrative remedies, the Plan concludes. *Id.* at 8–9. For its part, OSF alleges that the denial-of-benefits notice failed to meet

8

the 29 C.F.R. § 2560.503-1(g)(l) standard, so its administrative remedies are to be deemed exhausted. Compl. ¶ 21.

In its January 2, 2012 notice of denial of benefit, the Plan indicated that it was not paying $12,155.77 of Giordano's expenses on the grounds that they either exceeded the "usual, reasonable, and customary amounts" or were denied as "unbundled/unrelated/undocumented/ unidentified/duplicated or erroneous," in both cases citing the basis for such determination solely as "the general exclusions in your SPD."

These vague and formulaic recitations do not identify the evidence considered by the administrator and the weight assigned, nor do they provide a sufficiently clear picture of the reasoning underlying the administrator's decision to deny benefits. *See Dade*, 128 F.3d at 1142; *Halpin*, 962 F.2d at 694. Further, the Court can identify no provision in the SPD entitled "General Exclusions." To the extent that the notice invites the Plan participant to comb the 121-page SPD, not including amendments, for any and all discussion of coverage exclusions, and then deduce which one(s) relate, this provision reference is the opposite of "specific." *See* 29 C.F.R. § 2560.503-1(g)(l)(ii). Because the notice of benefits denial does not even substantially comply with the content requirements of § 2560.503-1(g)(l), OSF is deemed to have exhausted its administrative remedies. *See id.* § 2560.503-1(l).

Moreover, OSF furnished sufficient material to constitute an appeal within the 180-day window. OSF's May 3, 2012 and May 25, 2012 letters indicated OSF's refusal to accept the administrator's decision, its intent to pursue full payment, and its reason: it could not provide "usual and customary" pricing because it set its rates according to Medicare guidelines. The SPD does not mandate that an appeal be labeled as such, but merely that it include the participant's identification information, "facts and theories supporting the claim for benefits" and

9

any supporting material, and a "statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim."[3] Compl., Ex. A at 72, ECF No. 1-2. OSF's appeal provided such identifying information and a statement of reasons. To the extent it was light on supporting facts or theories, the SPD and appeal notice both provide that the penalty is waiver of the ability to argue those facts or theories on appeal, but not nullification of the appeal. *See id.* Moreover, supplementing OSF's notice was James Giordano's expressly titled "appeal" letter of June 30, 2012—within 180 days of OSF's likely receipt of the denial notice, by the Court's count—which gives a detailed factual account of the circumstances surrounding his son's treatment at St. Francis and the reasons OSF should receive full compensation. Giordano's letter therefore shored up any possible gaps in OSF's initial appeal.

Because OSF and Giordano timely appealed the Plan's benefits denial after the Plan provided deficient notice of that denial, OSF's suit is not barred for failure to exhaust administrative remedies.

### III. ERISA Pre-Emption

#### A. Legal Standard

ERISA supersedes state laws insofar as they "relate to" employee benefit plans. 29 U.S.C. § 1144(a). ERISA's "savings clause" preserves state laws that regulate insurance, banking, or securities from pre-emption. *Id.* § 1144(b)(2)(A). However, state laws that purport to regulate insurance by "deeming" an ERISA plan to be an insurer are subject to pre-emption. *See id.* § 1144(b)(2)(B); *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 970 (7th Cir. 2000). The Supreme Court has held that ERISA's "deemer clause" exempts self-funded ERISA

---

[3] Curiously, neither party mentions that the SPD expressly provides that "an appeal filed by a health care provider on behalf of a Plan participant is not considered an appeal under the Plan; all appeals must be filed by the Plan participant," Compl., Ex. A at 72, ECF No. 1-2, language which appears to render futile any internal appeal by OSF. Despite the glaring relevance of this provision, however, the Court makes no determination on an issue the parties have not argued.

plans from the application of state laws that "regulate insurance" within the meaning of the Savings Clause. *Id.* (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990)).

A state law "relates to" an ERISA plan under § 1144(a) if it "has a connection with or reference to" a plan. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). A state law "has reference to" an ERISA plan if it "acts immediately and exclusively upon ERISA plans" or if "the existence of ERISA plans is essential to the law's operation." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 563 (7th Cir. 2002). To determine whether a state law "has a connection" to an ERISA plan, a court "look[s] both to the objectives of the ERISA statute . . . as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 565 (quoting *Egelhoff*, 532 U.S. at 147).

*Egelhoff* found the state law at issue, concerning a divorced spouse's beneficiary status, had an impermissible connection because, unlike generally applicable laws with only incidental effect on ERISA plans, it purported to govern the payment of plan benefits, a "central matter of plan administration." 532 U.S. at 147–48. Where a plan employer was located in one state, the participant in another, and a former spouse and potential "beneficiary" in a third, administrators would be forced to familiarize themselves with different state statutes, and plan payments may be subject to conflicting legal obligations. *Id.* at 148–49. These circumstances would undermine Congress's goals for ERISA "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits," *id.* at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)), and to "minimize the administrative and financial burden" on plan administrators, often passed along as costs to the participants, *id.* at 150 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

*See also Holliday*, 498 U.S. at 60 ("We have not hesitated to apply ERISA's pre-emption clause to state laws that risk subjecting plan administrators to conflicting state regulations.")

An ERISA plan administrator must notify a claimant within 30 days of an adverse benefit determination. 29 C.F.R. 2560.503-1(f)(2)(iii)(B). The Illinois Insurance Code provides, in pertinent part, that an insurer or health care plan's failure to pay for health care services within 30 days of receipt of the claim entitles the services provider to 9% interest per year until the payment is made. 215 ILCS 5/368a(c). Whether ERISA pre-empts claims under this Illinois provision by health care providers against self-insured ERISA plans appears to be a matter of first impression.

Courts addressing the ERISA pre-emption of claims under similar "prompt pay" state statutes tend to find pre-emption unless the claim for payment arises from an independent agreement between provider and plan. *Compare Schoedinger v. United Healthcare of Midwest, Inc.*, 557 F.3d 872, 875–76 (8th Cir. 2009) (finding provider's claim, based on assignment of benefits from participant, for interest under Missouri prompt pay statute pre-empted by ERISA); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 938 (M.D. Tenn. 2013) (finding Tennessee Prompt Pay Act claim pre-empted because provider brought it as assignee of plan participant) *with In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1294 (S.D. Fla. 2003) (finding no pre-emption of providers' prompt pay claims arising from "a separate relationship between the provider and plan administrator," not assignment from participants). Additionally, the Eleventh Circuit found a Georgia prompt-pay provision pre-empted as applied to self-funded ERISA plans because the provision interfered with uniform administration of plan benefits. *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1331 (11th Cir. 2014). That is, policies subject to the law would require determination or payment by the plan within the specified

timeframe, and plans would have to pay more to those beneficiaries where the action was late. *See id.*

Similarly, district courts have found ERISA to supersede other Illinois statutes regulating payment from health care plans because of their interference with plan administration. For example, a claim under an Illinois statute guaranteeing a right to payment for health care services provided, *see* 810 ILCS 5/9-607(d), whose aim was to facilitate insurance companies' direct payment to medical providers, had an impermissible connection with ERISA plans. *Surgicore, Inc. v. Principal Life Ins. Co.*, No. 01 C 9387, 2002 WL 1052034, at * 3–4 (N.D. Ill. May 22, 2002). The court reasoned that the Illinois law "seeks to shift control over benefit distribution," thus interfering with plan administration. *Id.* Similarly, ERISA was found to pre-empt a claim under 215 ILCS 5/370(a)—which requires an insurer or plan to directly pay a health care professional or facility if an enrollee assigns her claim—because the provision (1) imposes additional burdens on administrators and shifted control over benefit distribution from the administrators to the beneficiaries, (2) potentially reduces a plan's ability to enter into an agreement with a provider, and (3) interferes with uniform national administration of the plan. *DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01 C 5940, 2001 WL 1403012, at *3–4 (N.D. Ill. Nov. 9, 2001).

### B. Analysis

The Plan argues for dismissal because OSF requests interest under 215 ILCS 5/368a(c) and ERISA pre-empts the Illinois prompt-pay statute's application to self-funded ERISA plans.[4] Def.'s Mem. in Supp. Mot. Dismiss 9–10. The Court reads OSF's Complaint, however, as asserting a claim for the balance of Giordano's care under ERISA, and asserting a second,

---

[4] While the parties also argue over the standard of review governing the denial of OSF's claim, the Court need not determine the issue to resolve this motion to dismiss, and will defer its decision until the parties have comprehensively briefed the matter at a later stage.

13

collateral claim, solely for interest, under 215 ILCS 5/368a(c). Therefore, while the Court finds the prompt-pay claim pre-empted by ERISA, as explained below, this determination has no bearing on OSF's primary claim, which survives.

OSF's claim for interest payment under 215 ILCS 5/368a(c) has an impermissible connection to an ERISA plan. *See Egelhoff*, 532 U.S. at 147. Regulation promulgated under ERISA requires notice of adverse benefits determination within 30 days, but under Illinois law, notice is insufficient—a claim must be paid within 30 days or interest accrues. The Plan thus faces a penalty if it does not expedite claims from providers subject to 215 ILCS 5/368a(c), affecting timing and potential cost of plan administration. *See Hudgens*, 742 F.3d at 1331. Moreover, the fact that the Plan could owe significant interest if UMR determines a claim is not payable but is reversed after years of litigation may influence the Plan's willingness to dispute claims in adherence to its interpretation of the SPD. The prompt-pay requirement thus affects fundamental plan decision-making, undermines any effort by the Plan to maintain a "standard procedure[] to guide processing of claims and disbursement of benefits," and exacerbates the burden on the Plan by subjecting it to potentially conflicting payment deadlines and costs state-to-state. *See Egelhoff*, 532 U.S. at 147–50. In this way, the prompt-pay provision shares fatal flaws with other Illinois insurance laws that courts have found pre-empted by ERISA. *See, e.g.*, *DeBartolo*, 2001 WL 1403012, at *3–4.

Additionally, OSF has only articulated a right to payment deriving from Giordano's participation in the Plan. OSF has not alleged any separate agreement with the Plan. The lack of independent agreement supporting its claim for prompt payment further weighs in favor of finding 215 ILCS 5/368a(c) superseded by ERISA under the trend emerging among federal courts considering prompt pay statutes. *See, e.g., Productive MD, LLC*, 969 F. Supp. 2d at 938.

Accordingly, OSF's claim under 215 ILCS 5/368a(c) "relates to" an ERISA plan under 29 U.S.C. § 1144(a). Even if it could be "saved" under § 1144(b) as an insurance regulation, the Plan's self-insured status means that application of 215 ILCS 5/368a(c) would fall within the Deemer Clause. *See Holliday*, 498 U.S. at 61. Therefore, OSF's claim for interest under 215 ILCS 5/368a(c) is dismissed as pre-empted by ERISA.

## CONCLUSION

Plaintiff's Motion for Leave to File Supplemental Response to Motion to Dismiss, ECF No. 14, is DENIED. Defendant's Motion to Dismiss, ECF No. 5, is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for interest pursuant to 215 ILCS 5/368a(c) is dismissed. Defendant's Motion is otherwise denied.

Entered this 23rd day of September, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
